803 F.2d 1456
 Medicare&Medicaid Gu 35,909
Lawrence J. DIRKSEN, M.D., John S. Wilson, M.D., Joseph A.
Hewitt, M.D., Charles H. Eid, M.D., Robert J. Blahut, M.D.,
Malcolm C. Hill, M.D., Leon G. Kaseff, M.D., Richard A.
Nelson, M.D., a partnership, Plaintiffs-Appellants,
v.
UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES;
Health Care Financing Administration; James L. Scott,
individually and as Acting Deputy Administrator for Health
Care Financing Administration; Dennis F. Siebert,
individually and as Director, Office of Public Affairs,
Health Care Financing Administration, et al., Defendants-Appellees.
 No. 85-2771.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 13, 1986.
Decided Nov. 4, 1986.
 
 Kathleen Hayes, Jensen, Rust & Doyle, San Francisco, Cal., for plaintiffs-appellants.
 Sandra L. Willis, Asst. U.S. Atty., San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before SNEED, FARRIS, and FERGUSON, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 Appellant Lawrence J. Dirksen, M.D., and his medical group (Dirksen) appeal from a district court order granting the Department of Health and Human Services' (DHHS) motion for summary judgment and dismissing his complaint brought under the Freedom of Information Act (FOIA), 5 U.S.C. Sec. 552. We affirm.
 
 I.
 FACTS AND PROCEEDINGS BELOW
 
 2
 The Department of Health and Human Services administers the Medicare program through an operating division designated as the Health Care Financing Administration (HCFA). Pursuant to statutory authority, DHHS has contracted with Blue Shield of California (Blue Shield) to process claims for payment submitted by physicians and other health care providers under Part B of the Medicare program. To carry out this task, Blue Shield has developed an internal document known as the "Medicare Policy Guidelines" (the Guidelines). The Guidelines determine whether, at the first stage of claims processing, claims for billed services should be paid, denied, or reviewed more closely. The Guidelines also contain instructions for computer coding and routing within Blue Shield.
 
 
 3
 Dirksen is a member of a medical partnership. He contacted HCFA in November 1983, to inquire whether the information submitted to Blue Shield on a standard claim form was adequate. In response to this inquiry, HFCA provided him with information and documents, including specific instructions for the completion of the form and Blue Shield's manual dealing with diagnosis coding. Dirksen expressed dissatisfaction with this response. On February 3, 1984, he submitted an FOIA request seeking disclosure of Blue Shield's "internal processing guidelines" (i.e., the Guidelines).
 
 
 4
 HCFA's Director of the Office of Public Affairs denied the request, based on his determination that release of the document could lead to "circumvention of agency regulations used in the discharge of the agency's regulatory function" and that, therefore, the document was exempt from disclosure pursuant to 5 U.S.C. Sec. 552(b)(2). He also contended that nondisclosure of the Guidelines was justified by Exemption 5, 5 U.S.C. Sec. 552(b)(5), encompassing documents that would not be available by law to a party in litigation with an agency. Dirksen appealed that decision to the Deputy Administrator. On August 20, 1984, the appeal was denied by HCFA's Acting Deputy Administrator on the same grounds cited in the initial denial. At various times during this exchange of letters, Blue Shield made itself available to Dirksen to discuss billing procedures.
 
 
 5
 Dirksen then brought an action in the district court, pursuant to 5 U.S.C. Sec. 552(a)(4)(B), to obtain review of the denial of the FOIA request. On May 20, 1985, pursuant to a stipulation between the parties, DHHS submitted Regional Administrator John O'Hara's affidavit, which described the document at issue and explained the basis for the denial of Dirksen's request. Based on this declaration, DHHS moved for summary judgment. Subsequently, Dirksen filed a cross-motion for summary judgment, supported in part by Dirksen's affidavit. At a hearing on July 18, 1985, the district court granted DHHS' motion for summary judgment and denied Dirksen's motion. Dirksen appeals.II.
 
 DISCUSSION
 A. Standard of Review
 
 6
 Review of summary judgment in this type of case is unusual. It is based on, first, whether "the district court had an adequate factual basis upon which to make its decision, and ... [second, whether] its decision that the documents were exempt ... was not clearly erroneous." Pollard v. FBI, 705 F.2d 1151, 1155 (9th Cir.1983); see Van Bourg, Allen, Weinberg & Roger v. NLRB, 751 F.2d 982, 984 (9th Cir.1985) (per curiam); Church of Scientology v. United States Department of the Army, 611 F.2d 738, 742 (9th Cir.1979).
 
 
 7
 DHHS meets the first part of this test squarely; the O'Hara affidavit was "detailed enough [to enable] the district court to make a de novo assessment of the government's claim of exemption." Doyle v. FBI, 722 F.2d 554, 555-56 (9th Cir.1983). See Clerk's Record (C.R.) item 19. We therefore turn to the issue of whether the district court clearly erred in finding that the material in question was exempt under FOIA, keeping in mind that "disclosure, not secrecy, is the dominant objective of the Act." Department of the Air Force v. Rose, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 1 (1976).
 
 
 8
 B. Exemption 2: "Internal Personnel Rules and Practices"
 
 
 9
 Exemption 2, 5 U.S.C. Sec. 552(b)(2), protects from disclosure under FOIA "matters that are ... related solely to the internal rules and practices of an agency." The interpretation of this exemption has been hotly contested. See, e.g., Department of the Air Force v. Rose, 425 U.S. 352, 362-70, 96 S.Ct. 1592, 1599-1603, 48 L.Ed.2d 11 (1976); Hardy v. Bureau of Alcohol, Tobacco & Firearms, 631 F.2d 653, 655-57 (9th Cir.1980); Ginsburg, Feldman & Bress v. Federal Energy Administration, 591 F.2d 717, 723-31, aff'd en banc and per curiam by an equally divided court, 591 F.2d 752 (D.C.Cir.1978), cert. denied, 441 U.S. 906, 99 S.Ct. 1994, 60 L.Ed.2d 374 (1979); Caplan v. Bureau of Alcohol, Tobacco & Firearms, 587 F.2d 544, 546-48 (2d Cir.1978). In Rose, the Supreme Court interpreted Exemption 2 in light of the differing House and Senate reports on the bill and determined that the Senate report, which more narrowly construed the exemption, controlled. 425 U.S. at 366-67, 96 S.Ct. at 1601-02. However, in Rose, the parties had not alleged that circumvention of agency regulations might result from disclosing the material. Id. at 364, 96 S.Ct. at 1600. The Court indicated that Exemption 2 might be applicable "where disclosure may risk circumvention of agency regulation." 425 U.S. at 369, 96 S.Ct. at 1603.
 
 
 10
 Here circumvention of this sort is a real possibility, and controlling is our decision in Hardy v. Bureau of Alcohol, Tobacco & Firearms, 631 F.2d 653 (9th Cir.1980), in which we held that Exemption 2 did apply under such circumstances. In Hardy, an attorney requested portions of the Bureau's "Raids and Searches" manual. The court, persuaded that the materials--if disclosed--could lead to circumvention, adopted the Second Circuit's reasoning in Caplan v. Bureau of Alcohol, Tobacco & Firearms, 587 F.2d 544 (2d Cir.1978). The Caplan court determined that disclosure of the manual would "hinder investigations [and] enable violators to avoid detection." Id. at 545. The Hardy court agreed with this reasoning and reemphasized the distinction between law-enforcement materials, which involve enforcement methods, and administrative materials, which define violations of the laws. 631 F.2d at 657. The latter are more likely to contain "secret law" that should be disclosed if requested. The former may be exempt if circumvention is likely. Id.
 
 
 11
 The Guidelines that Dirksen seeks do not define new classes of approved services different from what the public understands to be "covered"; instead, they merely categorize, for speed in processing, which claims are to be automatically granted, denied, or reviewed in more detail. See C.R. item 19, at 11 (affidavit stating that the Guidelines were "an internal claims processing blueprint which enables Blue Shield to handle the millions of claims it receives each year uniformly and expeditiously"). It is not difficult to believe that, among the care providers in possession of these materials, there would be some who would try to fit their claims into the "automatically granted" category. Nor is it difficult to believe that, upon the submission of a barrage of claims fashioned to conform to the Guidelines, the Guidelines would lose the utility they were intended to provide. The requested Guidelines serve an auditing function. Cf. Ginsburg, Feldman & Bress v. Federal Energy Administration, 591 F.2d 717, 718-21 (exempting, under section 552(b)(2), guidelines intended "to assure that the costs oil refiners use in computing their prices are correct and that the reports they make to the FEA are accurate"), aff'd en banc and per curiam by an equally divided court, 591 F.2d 752 (D.C.Cir.1978), cert. denied, 441 U.S. 906, 99 S.Ct. 1994, 60 L.Ed.2d 374 (1979). This puts them into the category of exempt law enforcement material. As Ginsburg noted,
 
 
 12
 [N]ormal policy considerations also require that [operational directives] remain confidential.... To turn such manuals over to those who are the subject of regulatory supervision is to dig a den for the fox inside the chicken coop.
 
 
 13
 Id. at 730. Because we find that the Guidelines are exempt under section 552(b)(2), we need not discuss whether they are also exempt under section 552(b)(5) (intra-agency memoranda).
 
 C. Attorneys' Fees
 
 14
 Dirksen seeks attorneys' fees under 5 U.S.C. Sec. 552(a)(4)(E), which provides for fees "in any [FOIA] case ... in which the complainant has substantially prevailed." Because Dirksen prevailed neither below nor here, we deny an award of fees.
 
 
 15
 AFFIRMED.
 
 FERGUSON, Circuit Judge, dissenting:
 
 16
 The purpose of the Freedom of Information Act ("FOIA") is "to ensure an informed citizenry," NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242, 98 S.Ct. 2311, 2326, 57 L.Ed.2d 159 (1978). Congress intended that the Act should mandate a broad disclosure of government documents, unless the government could establish that the information requested fell into one of the statutory exemptions. Church of Scientology v. U.S. Department of the Army, 611 F.2d 738 (9th Cir.1979). These exemptions are to be narrowly construed, Van Bourg, Allen, Weinberg & Roger v. NLRB, 751 F.2d 982, 984 (9th Cir.1985), and "do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act," Department of the Air Force v. Rose, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1975). In holding that the Medicare processing guidelines are exempt from disclosure under 5 U.S.C. Sec. 552(b)(2) ("Exemption 2"), the majority ignores the congressional policy of broad disclosure underlying the statute and misconstrues previous decisions of this circuit. I dissent.
 
 I.
 
 17
 The majority holds that the Medicare processing guidelines may be withheld under 5 U.S.C. Sec. 552(b)(2), which exempts from the statutory requirement of disclosure documents "related solely to the internal personnel rules and practices of an agency." The majority claims that this conclusion follows from previous decisions of this and other circuits that have determined that Exemption 2 may permit the withholding of law enforcement materials where there is a risk that disclosure would result in their circumvention. Stretching the concept of law enforcement materials to include a "claims processing blueprint"[1] is judicial legislation.
 
 
 18
 The genesis of the notion that Exemption 2 might justify the nondisclosure of law enforcement materials, an interpretation at odds with the plain language of the subsection, appears to lie in certain portions of the House Report on the statute.[2] The Senate Report, however, contradicts the House interpretation of this subsection.[3] The Supreme Court resolved this conflict in the legislative history in Department of the Air Force v. Rose, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1975), holding that the Senate's version more closely reflects the legislative purpose. Id. at 362, 96 S.Ct. at 1599. The Senate Report "indicates that the line sought to be drawn is one between minor or trivial matters and those more substantial matters which might be the subject of legitimate interest." Id. at 305 (quoting Vaughn v. Rosen (II), 523 F.2d 1136, 1142 (D.C.Cir.1975)). Thus, the Supreme Court concluded, "at least where the situation is not one where disclosure may risk circumvention of agency regulation, Exemption 2 is not applicable to matters subject to ... a genuine and significant public interest." Rose, 425 U.S. at 369, 96 S.Ct. at 1603.
 
 
 19
 There is no doubt that the Medicare processing guidelines are the subject of legitimate public interest. The guidelines indicate whether claims should be paid, denied, or reviewed in greater detail at the first stage of claims processing. This information is not "matter in which the public could not reasonably be expected to have an interest," Rose, 425 U.S. at 369, 96 S.Ct. at 1603. The majority asserts nevertheless that the guidelines may be withheld because their disclosure might lead to the circumvention of agency regulations, relying on the decision in Hardy v. Bureau of Alcohol, Tobacco & Firearms, 631 F.2d 653 (9th Cir.1980). In Hardy, this court reached the issue that the Supreme Court declined to reach in Rose of whether the risk of circumvention might permit the withholding of information under Exemption 2, holding that "materials that solely concern law enforcement" may be exempt under Exemption 2 if disclosure may risk circumvention of agency regulation. Id. at 657.
 
 
 20
 The majority miscontrues both the holding of Hardy and its reasoning in concluding that it supports nondisclousre in the case at bar. The court in Hardy made a careful distinction between "law enforcement" and "administrative" materials. Only "materials that solely concern law enforcement" may be exempt under Exemption 2. 631 F.2d at 657. By contrast,
 
 
 21
 All administrative materials, even if included in staff manuals that otherwise concern law enforcement, must be disclosed unless they come under one of the other exemptions of the act. Such materials contain the "secret law" which was the primary target of the act's broad disclosure provisions. Cox v. United States Department of Justice, 601 F.2d 1, 5 (D.C.Cir.1979). Further, as the Supreme Court observed in Department of the Air Force v. Rose [cite omitted], the thrust of Exemption 2 is not to limit disclosure to "secret law" but to relieve agencies of the burden of disclosing information in which the public does not have a legitimate interest.
 
 
 22
 Id.
 
 
 23
 Thus, Hardy holds that if law enforcement materials are involved, a risk of circumvention of agency regulations may justify withholding under Exemption 2; but where administrative materials are involved, they must be disclosed unless they fall within one of the other statutory exemptions. Although the majority alludes to the distinction between law enforcement and administrative materials, it ignores its plain meaning in holding that the processing guidelines fall into the first rather than the second category.
 
 
 24
 There is a clear distinction between the law enforcement manual sought in Hardy and the Medicare Guidelines at issue here. The document sought in Hardy was an agency manual describing specific techniques used by the officers of the Bureau of Alcohol, Tobacco and Firearms in conducting raids and searches. It does not require a stretch of the imagination either to define the manual as law enforcement material or to concede that its disclosure might lead to circumvention.
 
 
 25
 By contrast, appellants here seek disclosure from the Health Care Financing Administration ("HCFA") of a processing blueprint used by the personnel of Blue Shield to process the claims of health-care providers for reimbursement under Medicare Part B. These Medicare Guidelines more closely resemble the secret law that Hardy condemns than law enforcement material. The HCFA itself argues that the Guidelines are "not concerned with regulating the behavior of the public" (Brief of Appellees at 9) and that they "function as a device to speed initial adjudication by establishing uniform criteria to guide Blue Shield's claims personnel" (Brief of Appellees at 11). Before the district court, defendants described the guidelines as "an integral component of the complex automatic processing procedures required to administer the tremendous volume of Part B Medicare claims submitted annually to Blue Shield. Information contained in the Guidelines serves to instruct Blue Shield personnel on the administration and routine adjudication of these claims." (Defendant's Summary Judgment Memorandum, ER 53).
 
 
 26
 In interpreting Exemption 2 to reach "an internal claims processing blueprint," the majority ignores the policy in favor of a narrow construction of the statutory exemptions, and expands the concept of "law enforcement" in a fashion that is directly contrary to the purpose of the statute. If the majority's approach is adopted, an agency may throw a blanket of silence over any internal procedures that directly affect the public by claiming that the information sought is law enforcement material, the disclosure of which might lead to the circumvention of agency regulations. This is not the purpose of the Act. Even were I to concede that the Guidelines might have some tenuous connection with a "law enforcement" function, a connection which the majority apparently takes for granted, this connection alone would not justify the withholding of information. The government must also demonstrate a risk of circumvention. Hardy, 631 F.2d at 657. As the Second Circuit noted, "much activity which at its inception is administrative in character may eventually lead to law enforcement proceedings," but it is not the purpose of the Act to exclude from disclosure all material that might eventually affect the law enforcement process. Hawkes v. IRS, 467 F.2d 787, 795 (2d Cir.1972). Rather, "enforcement is adversely affected only when information is made available which allows persons simultaneously to violate the law and to avoid detection." Id. In Hawkes the court explained that:
 
 
 27
 Far from impeding the goals of law enforcement ... the disclosure of information clarifying an agency's substantive or procedural law serves the very goals of enforcement by encouraging knowledgeable and voluntary compliance with the law. Such clarifying information is found ... in manuals and instructions ... addressed specifically to agency personnel ... in the criteria for investigative action, in standards for evaluation and so forth.
 
 
 28
 Id.
 
 
 29
 The processing guidelines, upon the agency's own admission, set forth the uniform criteria to be used in processing the claims of health-care providers, and thereby clarify the operation of the claims compensation scheme. In upholding the agency's refusal to disclose this information, the majority appears to take the position that information may be withheld on the basis of a risk of circumvention, when disclosure would in fact make it easier for those affected by the agency's rules to conform their conduct more closely to its requirements. Under such an approach the risk of circumvention is indistinguishable from the prospect of enhanced compliance.
 
 
 30
 Finally, the majority seeks justification for defining the guidelines as law enforcement material by stating that they perform an auditing function. The majority finds an analogous situation in Ginsburg, Feldman & Bress v. FEA, 591 F.2d 717, aff'd en banc and per curiam by an equally divided court, 591 F.2d 752 (D.C.Cir.1978), cert. denied, 441 U.S. 906, 99 S.Ct. 1994, 60 L.Ed. 2d 734 (1970).
 
 
 31
 Ginsburg, however, presents quite a different case from the one at bar. In Ginsburg, lawyers representing clients before the Federal Energy Administration ("FEA") sought disclosure of all materials "utilized by FEA to train, instruct, direct, guide or supervise refinery auditors in the performance of their duties." Id. at 717. The FEA is charged with administering the Federal Mandatory Petroleum Price Regulations and other federal laws and regulations relating to the refining of petroleum products. Periodic audits are used to monitor industry compliance. The information sought in Ginsburg was material used by the agency to guide its auditors in conducting these compliance audits. In holding that the materials fell within the scope of Exemption 2, the court held that they set forth the practices of an agency "that direct[s] auditors of the Energy Administration in the manner of executing audits of publicly regulated refinery companies," the purpose of which is "to aid in investigations designed to enforce the law." Id. at 730-31.
 
 
 32
 There is clearly a substantial difference between the information sought in Ginsberg, the guidelines to the agency's audit procedures for monitoring industry compliance, and the Medicare processing guidelines, which provide a blueprint for the uniform and expeditious processing of claims by Blue Shield personnel. The holding in Ginsburg rests on the law enforcement function that the auditing guidelines fulfilled. The HCFA cannot withstand a request for disclosure merely by describing its claims processing guidelines as fulfilling an "auditing" function, hoping thereby to bring them within the ambit of the exception for law enforcement materials that the courts have created in interpreting section 552(b)(2).
 
 
 33
 The basic thrust of the Freedom of Information Act is the disclosure, not the withholding, of information. It reflects "a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." S.Rep. No. 813, 89th Cong., 1st Sess. 3 (1965). The materials at issue here are not exempt under the language of section 552(b)(2). To hold, as the majority does, that the processing guidelines of the HCFA are law enforcement materials whose disclosure may risk circumvention is judicial legislation in defiance of congressional intent.
 
 II.
 
 34
 Holding that the information may be withheld under Exemption 2, the majority does not reach the issue of whether the Guidelines are exempt from disclosure under 5 U.S.C. Sec. 552(b)(5).
 
 
 35
 Section 552(b)(5) permits the nondisclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." Assuming that we have jurisdiction to dispose of this issue,[4] I would hold that the exemption does not apply to the Medicare processing guidelines.
 
 
 36
 From the language of the exemption it is clear that Congress attempted to incorporate into the FOIA certain principles of civil discovery law. Specifically, Exemption 5 applies to "those documents and only those documents normally privileged in the civil discovery context." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1974).
 
 
 37
 The courts have recognized that Exemption 5 protects as a general rule three kinds of information: materials which would be protected under the attorney-client privilege, Mead Data Central, Inc. v. U.S. Department of Air Force, 566 F.2d 242, 252-55 (D.C.Cir.1977); the attorney work-product privilege, NLRB v. Sears, 421 U.S. at 154; and the executive privilege for the deliberative process, EPA v. Mink, 410 U.S. 73, 85-90, 93 S.Ct. 827, 835-37, 35 L.Ed.2d 119 (1972). It is the third of these categories on which the HCFA presumably would rely.[5]
 
 
 38
 The policy underlying the application of Exemption 5 to the deliberative process is to encourage the discussion of legal and policy matters among government policy officials. S.Rep.No. 813 at 9, quoted in EPA v. Mink, 410 U.S. at 73, 93 S.Ct. at 829. A document must meet two requirements for the deliberative process privilege to apply: the document must be pre-decisional--generated before the adoption of an agency's policy or decision--and it must be deliberative in nature, containing opinions, recommendations or advice about agency policies. FTC v. Warner Communications, Inc., 742 F.2d 1156, 1161 (9th Cir.1984).
 
 
 39
 The guidelines are used to assist the staff of the agency in the routine processing of claims. They are not predecisional nor do they contain suggestions or recommendations as to what agency policy should be. "No 'decision' is being made or 'policy' being considered." Coastal States Gas Corp., 617 F.2d 854, 868 (D.C.Cir.1980). I would hold that the documents are not within the privilege for the deliberative process and may not be withheld under Exemption 5.
 
 
 40
 I re-emphasize the narrow scope of the statutory exemptions and the strong policy of the FOIA in favor of public access to government information. The district court was clearly in error in determining that the HCFA could withhold the guidelines under Exemption 2. The majority is wrong to affirm the decision of the district court. I dissent.
 
 
 
 [1]
 The affidavit supplied by the agency states that the guidelines are "an internal claims processing blueprint which enable Blue Shield to handle the millions of claims it receives each year uniformly and expeditiously."
 
 
 [2]
 "Matters related solely to the internal personnel rules and practices of an agency: Operating rules, guidelines, and manuals of procedure for Government investigators or examiners would all be exempt from disclosure...." H.R.Rep. No. 1497, 89th Cong., 2d Sess. 10, reprinted in 1966 U.S. Code Cong. and Admin. News 2418
 
 
 [3]
 Exemption No. 2 relates only to the internal personnel rules and practices of an agency. Examples of these may be rules as to personnel's use of parking facilities or regulations of lunch hours, statements of policy as to sick leave and the like. S.Rep. No. 813, 89th Cong., 1st Sess. 3, 8 (1965)
 
 
 [4]
 The Exemption 5 claim was not raised before the district court, as the HCFA chose to rely instead solely on the Exemption 2 claim (ER 48). The order of the district court granting summary judgment therefore addressed only the Exemption 2 issue. (ER 43). On appeal to this court, neither of the parties briefed the issue of whether Exemption 5 applies. It has perhaps become increasingly clear to the HCFA that Exemption 5 has no applicability to this case
 
 
 [5]
 In the agency's administrative denial of the request for information, the Acting Administrator of the HCFA attempted to bring the guidelines within Exemption 5 by characterizing them as "factual data compiled in such a way that its release would compromise the agency deliberative process regarding policy enforcement decisions." (Exhibit J, ER 34)