**DeLORME PUBLISHING COMPANY, INC., Plaintiff,**

v.

**The NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION OF the UNITED STATES DEPARTMENT OF COMMERCE, Defendant.**

Civil No. 95–94–P–H.

United States District Court, D. Maine.

March 12, 1996.

Gordon H.S. Scott, Eaton, Peabody, Bradford & Veague, P.A., Augusta, ME, for Plaintiff.

Sherri L. Wattenbarger, Richard Visek, Elizabeth A. Pugh, Federal Programs Branch, Civil Division, U.S. Department of Justice, Washington, DC, David R. Collins, Assistant United States Attorney, Portland, ME, for Defendant.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

HORNBY, District Judge.

I have ruled that the National Oceanic and Atmospheric Administration's ("NOAA") electronic "raster" compilations of its nautical charts—compilations that can be read by computers—are "agency records" subject to disclosure under the Freedom of Information Act ("FOIA") unless a specific exemption applies. *DeLorme Pub. Co. v. NOAA,* 907 F.Supp. 10 (D.Me.1995). I now conclude that NOAA may withhold its raster compilations under FOIA Exemption 3 and the Federal Technology Transfer Act for five years from the date of their development.

### I. BACKGROUND

The case is presented on cross-motions for summary judgment, but there are no material facts genuinely in dispute. In October 1993, NOAA, through its National Ocean Service, initiated the process of selecting a private partner to participate in a cooperative research and development agreement ("CRADA") to produce an electronic nautical charting system. Such public-private cooperation is authorized and encouraged by the Federal Technology Transfer Act ("FTTA"). 15 U.S.C. § 3710a. A number of firms, including the plaintiff DeLorme, expressed an interest in the project, but NOAA ultimately selected BSB Electronic Charts ("BSB") as its private partner. NOAA and BSB signed an initial CRADA in August of 1994. As part of its anticipated contribution to the CRADA, NOAA created 202 digitized raster compilations of nautical charts during 1993 and 1994 by scanning the color negatives used to create NOAA's paper charts. Another 21 raster files were created between August and November 1994, where BSB's role was to "work[ ] side-by-side with [Agency] personnel ... performing scanning, processing and related activities." Enabnit Decl. at ¶ 18. In November of 1994, DeLorme sent NOAA two FOIA requests seeking disclosure of all the raster compilations and certain documents relating to the CRADA. NOAA refused to produce any of the raster compilations and some of the documents. As a result, DeLorme brought this FOIA lawsuit.

NOAA claims that three FOIA exemptions apply to the digitized versions of its nautical charts and permit it to refuse disclosure. Specifically, NOAA argues that the raster compilations are exempt from disclosure under Exemption 3, 5 U.S.C. § 552(b)(3), because the FTTA authorizes their protection; Exemption 2, § 552(b)(2), because they relate to "the internal personnel rules and practices" of NOAA; and Exemption 5, § 552(b)(5), because they are "intra-agency memorandums" that would not ordinarily be obtainable through discovery in a lawsuit against the Agency.

As to the *documents* requested, NOAA argues that the portions it has withheld are exempt from disclosure under both Exemption 5 and Exemption 6, § 552(b)(6), which protects against unwarranted invasions of privacy.

### II. FOIA EXEMPTION 3

FOIA Exemption 3 allows an agency to withhold records that are "specifically exempted from disclosure by [a] statute" other than FOIA, as long as the statute: "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3).

 NOAA contends that the FTTA is an exempting statute. 15 U.S.C. § 3710 *et seq.* As amended in 1989, the FTTA contains a provision, similar to FOIA Exemption 4, limiting disclosure, in certain circumstances, of "commercial ... information that is privileged or confidential." 15 U.S.C. § 3710a(c)(7). Examining an agency's Ex-

emption 3 claim ordinarily requires analysis of whether the statute in question is an "exempting statute" within the meaning of Exemption 3 and, if so, whether the requested information is "included within" that statute's protection, *Aronson v. IRS,* 973 F.2d 962, 964 (1st Cir.1992), but DeLorme has not contested NOAA's assertion that the FTTA qualifies and therefore has waived any arguments to the contrary.

■ Because the FTTA is an Exemption 3 statute, "FOIA *de novo* review normally ends," and review of the agency's interpretation of the statute's protection "must take place under more deferential, administrative law standards." *Id.* at 967; *see also Church of Scientology Int'l v. Dept. of Justice,* 30 F.3d 224, 235 (1st Cir.1994). Those standards are governed by the *Chevron* doctrine and typically require courts to give considerable deference to an agency's construction of an ambiguous statute. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Strickland v. Comm'r Dept. Human Services,* 48 F.3d 12 (1st Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 145, 133 L.Ed.2d 91 (1995).

■ However, "the deference accorded to an administrative agency's interpretations depends on the extent to which the matters at issue depend peculiarly on the agency's field of expertise." *McCuin v. Sec'y of Health and Human Services,* 817 F.2d 161, 168 (1st Cir.1987); *see also Strickland,* 48 F.3d at 18 ("[C]ourts afford varying degrees of deference to agency interpretations in varying circumstances."). The Supreme Court has stated that, when Congress does not entrust a single agency with the task of administering a statute, "[t]here is ... not the same basis for deference predicated on expertise" that the Court found in *Chevron.* *Bowen v. American Hosp. Ass'n,* 476 U.S. 610, 643 n. 30, 106 S.Ct. 2101, 2120 n. 30, 90 L.Ed.2d 584 (1986). In *Bowen,* the Court did not defer to an agency's interpretation of a statute protecting the rights of handicapped persons because the statute affected all government agencies, and 27 agencies had promulgated regulations under the statute. *Id.* Similarly, the statute at issue in this case, the FTTA, has broad application and has been implemented by more than a dozen agencies. To defer to NOAA's interpretation of the statute would thus "lay the groundwork for a regulatory regime in which either the same statute is interpreted differently by [different] agencies or the one agency that happens to reach the courthouse first is allowed to fix the meaning of the text for all." *Rapaport v. Dep't of Treasury, Office of Thrift Supervision,* 59 F.3d 212, 216–17 (D.C.Cir.1995) (declining to accord *Chevron* deference to agency's position where statute is administered by several other agencies), *cert. denied,* — U.S. —, 116 S.Ct. 775, 133 L.Ed.2d 727 (1996). Therefore, I continue to proceed *de novo.*[1]

Congress enacted the FTTA in 1986 "to improve the transfer of commercially useful technologies from the Federal laboratories and into the private sector" to strengthen the nation's military and economic competitiveness. S.Rep. No. 283, 99th Cong., 2d Sess. 1 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3442. Toward that end, the Act "authorizes a broad range of cooperative research and development arrangements where there is a mutual interest between the laboratory mission and

---

1. An argument can be made that, as a branch of the Department of Commerce, NOAA's interpretation of the FTTA should be given more deference than another agency's. (The legislative history of the Stevenson–Wydler Technology Innovation Act of 1980, 15 U.S.C. § 3701 *et seq.,* which the FTTA amended in 1986, indicates that Congress intended the Commerce Department to have "lead agency responsibility for the executive branch initiatives to promote innovation." H.R.Rep. No. 1199, 96th Cong., 2d Sess. 12 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4892, 4902.) I am unwilling to accord such deference, however, for three reasons. First, Commerce's role is facilitative; it does not have enforcement authority. The FTTA authorizes "[e]ach Federal agency" to enter into CRADAs independently, with or without the blessing of Commerce. 15 U.S.C. § 3710a(a). Second, Commerce has never issued formal regulations or guidelines for its own implementation of the FTTA. Third, in amending the FTTA in 1989, the House Conference Report notes that "[t]he conferees ... do not envision overall government regulations" relating to technology transfers. H.R.Conf.Rep. No. 331, 101st Cong., 1st Sess. 759 (1989), *reprinted in* 1989 U.S.C.C.A.N. 838, 977, 1149.

... private sector organizations." *Id.* at 10, 1986 U.S.C.C.A.N. at 3451.

In 1989, Congress amended the FTTA to provide, with respect to cooperative research and development ventures, two types of protection from disclosure for "commercial ... information that is privileged or confidential." 15 U.S.C. § 3710a(c)(7). First, the Act *prohibits* an agency from disclosing such information if it "is obtained in the conduct of research or as a result of activities under this chapter [Title 15, Ch. 63, Technology Innovation] from a non-Federal party participating in a [CRADA]." § 3710a(c)(7)(A). Second, the act *allows* an agency to withhold information for up to five years if that information "results from research and development activities under this chapter and that would be ... commercial ... information that is privileged or confidential if the information had been obtained from a non-Federal party participating in a [CRADA]." § 3710a(c)(7)(B).[2] In other words, if qualifying information is *obtained from* the CRADA's private partner—in this case BSB—it cannot be disclosed. However, if qualifying information is obtained from the agency and would have been protected if it had come from the private partner, the agency has the discretion to withhold it, but only for a five-year period. Congress concluded that such protection was necessary because "the threat of disclosure under [FOIA] of commercial information, developed under the CRADA or otherwise, has been the biggest reason to date for companies declining to enter CRADAs." H.R.Conf.

Rep. No. 331, 101st Cong., 1st Sess. 761 (1989), *reprinted in* 1989 U.S.C.C.A.N. 977, 1150.

### A. The 202 Raster Files Created in Anticipation of the CRADA

NOAA maintains that it may withhold for five years under § 3710a(c)(7)(B) the 202 raster compilations it created prior to signing the CRADA because: (1) the raster files are information resulting from "research and development activities"; (2) those activities were "conducted under" the Technology Innovation chapter of Title 15; and (3) the raster files would be "commercial" and "confidential" information if obtained from the private partner. DeLorme contests each assertion.

### 1. Research and Development Activities

■ The FTTA does not define "research and development." That term is defined elsewhere in Title 15, however, to include, "a systematic application of knowledge toward the production of useful materials, devices, and systems or methods, including design, development, and improvement of prototypes and new processes to meet specific requirements." 15 U.S.C. § 638(e)(5).[3] Although DeLorme insists that NOAA's production of the raster files entailed nothing more than the mechanical process of feeding the chart films into an electronic scanner, and no research and development, that is too narrow a focus. FTTA protection is available for "information that results from research and de-

2. Section 3710a(c)(7), in its entirety, reads as follows:

(A) No trade secrets or commercial or financial information that is privileged or confidential, under the meaning of section 552(b)(4) of Title 5 [FOIA Exemption 4], which is obtained in the conduct of research or as a result of activities under this chapter from a non-Federal party participating in a cooperative research and development agreement shall be disclosed. (B) The director, or in the case of a contractor-operated laboratory, the agency, for a period of up to 5 years after development of information that results from research and development activities conducted under this chapter and that would be a trade secret or commercial or financial information that is privileged or confidential if the information had been obtained from a non-Federal party participating in a cooperative research and development agree-

ment, may provide appropriate protections against the dissemination of such information, including exemption from subchapter II of chapter 5 of Title 5 [FOIA].

There is no argument that the raster files are trade secrets or financial information; NOAA asserts only that they are commercial information.

3. This particular wording is a product of the Small Business Innovation Development Act of 1982, which amended the definition of "research and development" to conform with the one used by the Office of Management and Budget. S.Rep. No. 194, 97th Cong., 2d Sess. 14 (1982), *reprinted in* 1982 U.S.C.C.A.N. 512, · 525. The purpose of that Act is similar to that of the FTTA: to "stimulate technological innovation" and "increase the private sector commercialization and utilization of inventions derived from [] Federal research." *Id.* at 7, 1982 U.S.C.C.A.N. at 518.

velopment activities." § 3710a(c)(7)(B). The raster files have been created as one step in the larger process of developing NOAA's nautical data—previously limited to paper charts—into an end-product suitable for reliable and efficient computer usage by consumers in conjunction with global positioning technology. That process clearly entails "a systematic application of knowledge toward production of useful materials [or] devices." § 638(e)(5).[4]

### 2. Conducted Under

■ The second issue is whether the 202 initial raster files were the result of research and development activities "conducted under" the Technology Innovation chapter of Title 15, 15 U.S.C. § 3701 *et seq.* NOAA asserts that it created them in anticipation of entering into a CRADA. DeLorme does not contest that assertion, but argues that only research and development occurring *after* a CRADA is finalized comes "under" the chapter. The FTTA does not define what it means by activities "conducted under" the statute. Standing alone, the phrase is obviously broad and not limited to what happens after a particular CRADA is signed. The legislative history supports a broad reading. The House conference report for P.L. 101–189, which amended the FTTA to add the language in dispute, states that § 3710a(c)(7) is intended to "exempt from public disclosure certain information *brought into* a CRADA *or* generated under a CRADA." H.R.Conf. Rep. No. 331 at 761, 1989 U.S.C.C.A.N. at 1150 (emphases added). Similarly, the Senate Report for the FTTA makes clear that Congress anticipated that "firms may be attracted to a laboratory by interest in *an existing invention*" in addition to expected future inventions. S.Rep. No. 283 at 11, 1986 U.S.C.C.A.N. at 3452–53 (emphasis added).

That broad interpretation makes sense in light of the purpose of both the FTTA and the original Stevenson–Wydler Technology Innovation Act, which created the Technology Innovation chapter, "to stimulat[e] improved utilization of federally funded technology developments by . . . the private sector." H.R.Rep. No. 1199, 96th Cong., 2d Sess. 1 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4892; *see also* S.Rep. No. 283 at 1, 1986 U.S.C.C.A.N. at 3442. I conclude that the 202 raster files NOAA created in anticipation of CRADA qualify as "activities conducted under" the Technology Innovation chapter.

### 3. Commercial and Confidential Information

■ The final issue is whether the 202 raster files qualify as "commercial" and "confidential" information.[5] Although these terms are statutorily undefined, the circuit courts are nearly unanimous on their meanings. "Commercial" is given its ordinary meaning and applies broadly to information in which a private party would have a commercial interest if it had submitted the information to the government. *Public Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1290 (D.C.Cir.1983). The raster files at issue here certainly are of commercial interest to BSB.

■ In determining whether commercial information is "confidential," courts do not focus upon "whether the information has customarily been regarded as confidential," but instead look to "the potential harm that will result from disclosure." *9 to 5 Org. v. Bd. of Governors of the Fed. Reserve Sys.*, 721 F.2d 1, 10 (1st Cir.1983). Therefore, commercial information:

is "confidential" for purposes of the exemption if disclosure of the information is like-

---

4. DeLorme also argues that NOAA's endeavors, taken as a whole, are not "research and development" because they are not "novel" and simply involve tasks that DeLorme routinely undertakes whenever it develops new computer maps. Gray Aff. at ¶ 4. The fact remains that NOAA is systematically applying knowledge toward the development of a new product; whether DeLorme routinely conducts the same type of research and development for its products has no bearing on the matter.

5. Section 3710a(c)(7)(B) uses the terms "commercial" and "confidential" as they would apply hypothetically to information obtained from a private partner. Section 3710a(c)(7)(A) deals with the protection of such information when it comes from a private partner and in turn adopts the construction given under Exemption 4 of the FOIA. 5 U.S.C. § 552(b)(4).

ly to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.

*Id.* at 8, quoting *National Parks and Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C.Cir.1974). NOAA argues that both effects exist in this case. It asserts that, assuming that the information hypothetically had come from BSB—as § 3710a(c)(7)(B) requires for this analysis—disclosure of the raster files would (1) impair the government's efforts under the FTTA by discouraging private firms from participating in CRADAs in the future, and (2) harm BSB's competitive position by giving the information to competitors after BSB had invested considerable resources in developing the data for commercial application. NOAA "is in the best position to determine the effect of disclosure on its ability to obtain necessary technical information" in the future, and it has "plausibly supported" its conclusion "in some detail." *Orion Research Inc. v. EPA*, 615 F.2d 551, 554 (1st Cir.), *cert. denied*, 449 U.S. 833, 101 S.Ct. 103, 66 L.Ed.2d 38 (1980). I conclude that the raster compilations meet the test of confidential information.[6]

In summary, because the 202 raster files created in anticipation of the CRADA are commercial and confidential information resulting from research and development activities conducted under the FTTA, NOAA is entitled to prevent their disclosure for up to five years from the date of their development under § 3710a(c)(7)(B).

### B. The 21 Raster Files Created During the CRADA

 NOAA also seeks protection for 21 raster compilations created after it entered into the joint research and development agreement with BSB.[7] These 21 raster files could be withheld by NOAA for up to five years, if NOAA generated them, on the reasoning I have just given. NOAA, however, claims that the files were jointly created by the Agency and BSB and are therefore subject to mandatory and permanent protection from disclosure as information "obtained . . . from a non-Federal party participating in a [CRADA]." § 3710a(c)(7)(A). Taking the facts in a light most favorable to NOAA, BSB's only role was as follows: "BSB personnel worked side-by-side with [NOAA] . . . performing scanning, processing and related activities necessary to create the compilations." Enabnit Decl. at ¶ 18. I agree with DeLorme that the presence of BSB personnel during the scanning process is insufficient to convert the rasters into information "obtained from" a private party.[8] These raster files are entitled only to the five-year protection of § 3710a(c)(7)(B).

### C. "Vector Conversions" of the Raster Files

 DeLorme also seeks access to "vector conversions" of the raster files. A vector conversion is a database containing verbal descriptions of chart features and their at-

---

6. The First Circuit has not yet addressed the revised definition of "confidential" set forth in *Critical Mass Energy Project v. NRC*, 975 F.2d 871 (D.C.Cir.1992) (en banc), *cert. denied*, 507 U.S. 984, 113 S.Ct. 1579, 123 L.Ed.2d 147 (1993). The *Critical Mass* court broadened Exemption 4's reach by holding that commercial information voluntarily provided to the government is confidential "if it is of a kind that would customarily not be released to the public" by the submitting party. *Id.* at 879. Applying that new standard to this case would produce the same result. Obviously, mapping companies do not customarily release their computer databases to the public. The fact that the raster files are incorporated into the end-products distributed to the public, and that sophisticated consumers conceivably could extract the raster data from those products, does not change this result.

7. There appears to be some confusion as to the number of rasters at issue here. NOAA states that there are 21, while DeLorme refers to 22 or 24 rasters at various points in its briefs. The number is irrelevant for purposes of this order; the same reasoning applies to all raster files created under the CRADA.

8. In a supplemental declaration, NOAA states that the Agency and BSB "[p]erformed R & D on different raster files formats and extended the NOAA-developed format." Enabnit Supp.Decl. at ¶ 1.a. NOAA, however, neither reveals BSB's actual role in this process nor asserts that the format changes were incorporated into the 21 raster files in question.

tributes. NOAA claims, after a thorough search of its records, that it has never possessed any such vector conversions. To avert summary judgment on this point, DeLorme is required to show either "that [NOAA] might have discovered" the vector conversions had it undertaken a "reasonable search," or that the Agency acted in bad faith. *Maynard v. CIA,* 986 F.2d 547, 560 (1st Cir.1993). DeLorme has shown neither. I therefore conclude that NOAA has fulfilled its obligations under the FOIA with regard to the vector conversions; an agency cannot "withhold" records that are not in its possession. *See Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 151–52, 100 S.Ct. 960, 969, 63 L.Ed.2d 267 (1980).[9]

### III. FOIA EXEMPTION 2

Although I find that NOAA may protect the raster files from disclosure for up to five years from the date of their development, I also address NOAA's Exemption 2 claim because it offers the potential for indefinite protection.

FOIA Exemption 2 allows an agency to withhold records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Urging a broad interpretation of the exemption, NOAA argues that the raster compilations sought by DeLorme qualify for protection because they shed light upon the Agency's internal charting practices.

 NOAA bears the burden of proving that the raster files are exempted "under clearly delineated statutory language." *Tax Analysts v. Dept. of Justice,* 845 F.2d 1060, 1064 (D.C.Cir.1988), quoting S.Rep. No. 813, 89th Cong., 1st Sess. 3 (1965), *aff'd,* 492 U.S. 136, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989). "Congress intended that Exemption 2 be interpreted narrowly and specifically." *Dep't of Air Force v. Rose,* 425 U.S. 352, 365, 96

S.Ct. 1592, 1601, 48 L.Ed.2d 11 (1976), quoting *Vaughn v. Rosen,* 523 F.2d 1136, 1142 (D.C.Cir.1975). In *Rose,* the Court noted that "[t]he phrasing for Exemption 2 is traceable to congressional dissatisfaction with the exemption from disclosure under former § 3 of the Administrative Procedure Act [APA] of 'any matter related solely to the *internal management* of an agency.'" 425 U.S. at 362, 96 S.Ct. at 1600 (emphasis added). Thus, the Court concluded that Congress intended Exemption 2 to have a "narrower reach" than the APA exemption for the internal management category. *Id.* at 363, 96 S.Ct. at 1600.

The statutory language of Exemption 2 is pretty unambiguous. It is difficult to see how the raster compilations could, under any stretch of the imagination, be said to be "related solely to the internal personnel rules and practices" of NOAA. Nevertheless, I recognize that the D.C. Circuit, which has the most experience in dealing with FOIA, has spilled a lot of ink over the meaning of this phrase. Initially, judges within that court reached an apparent impasse over whether the term "personnel" modified "practices" as well as "rules." *See Ginsburg, Feldman & Bress v. Fed. Energy Admin.,* 591 F.2d 717, 723–25 (D.C.Cir.1978), *vacated and reheard en banc,* 591 F.2d 752 (district court affirmed by equally divided vote), *cert. denied,* 441 U.S. 906, 99 S.Ct.1994, 60 L.Ed.2d 374 (1979); *Id.* at 740–42 (Wilkey, J., dissenting); *Jordan v. Dep't of Justice,* 591 F.2d 753, 763–67 (D.C.Cir.1978) (en banc); *Id.* at 794–95 (MacKinnon, J., dissenting). The D.C. Circuit ultimately came up with a new position that interpreted the whole phrase as meaning "rules and practices governing agency personnel," giving examples like job training rules. *Crooker v. BATF,* 670 F.2d 1051, 1056 (D.C.Cir.1981) (en banc).[10] For policy reasons, that circuit also

---

**9.** Even if the vector conversions were in NOAA's possession, NOAA would be entitled to withhold them for five years under Exemption 3; the conclusions reached above apply equally to the vector conversions and the raster files.

**10.** A split in authority among the other circuits both mirrors the debate within the D.C. Circuit on this issue and illuminates the outer limits of Exemption 2's reach. Three circuit courts have

adopted a broad reading of the phrase "internal personnel rules and practices of an agency" similar to *Crooker* 's. *See Caplan v. BATF,* 587 F.2d 544, 547 (2d Cir.1978) (exempting manual on raids and searches from disclosure); *Hardy v. BATF,* 631 F.2d 653, 656 (9th Cir.1980) (same); *Massey v. FBI,* 3 F.3d 620, 622 (2d Cir.1993) (exempting informant codes and identifiers); *Kaganove v. EPA,* 856 F.2d 884, 888 (7th Cir.1988)

has replaced the statutory language "related solely to" with the judicial gloss "predominantly," *id.* at 1068, 1074, and now seems to view the test as whether the item in question "shed[s] significant light" on such a rule or practice. *Schwaner v. Dep't of Air Force,* 898 F.2d 793, 797 (D.C.Cir.1990).

■■■ Whether I follow the plain language of FOIA Exemption 2 or the creative gloss the D.C. Circuit has added, NOAA's argument is still too broad. The raster compilations simply do not shed significant light upon anything having to do with personnel matters or rules or practices governing agency personnel, and they are neither solely nor predominantly related to such matters.[11] These files are not at all like the law enforcement guidelines, *Dirksen v. Dep't of Health and Human Servs.,* 803 F.2d 1456, 1458–59 (9th Cir.1986), hiring criteria, *Nat'l Treasury Employees Union v. U.S. Customs Service,* 802 F.2d 525, 528–29 (D.C.Cir.1986), or investigative techniques, *Windels, Marx, Davies & Ives v. Dep't of Commerce,* 576 F.Supp. 405, 412 (D.D.C.1983), protected in the cases upon which NOAA relies. Instead, the raster files are electronic compilations of data assembled by NOAA to fulfill the agency's mission. Nothing in Exemption 2 supports the proposition that government "information may be withheld simply because it manifests an agency practice of *collecting* the information." *Schwaner,* 898 F.2d at 797 (emphasis in original) (personnel lists not protected); *see also Retired Officers Ass'n v. Dep't of*

*Navy,* 716 F.Supp. 662, 665 (D.D.C.1989) (same) ("To fall within the ambit of Exemption 2, it is not enough that the requested information be generated and used for the purpose of facilitating matters of internal management."), *vacated in part on other grounds,* 744 F.Supp. 1 (1990).

## IV. FOIA EXEMPTION 5

NOAA claims that the raster compilations may also be withheld under FOIA Exemption 5, which protects certain agency memoranda and letters. 5 U.S.C. § 552(b)(5). Consistent with the policies of the FTTA, 15 U.S.C. § 3710a(c)(7)(B), however, NOAA seeks protection under Exemption 5 only for a maximum period of five years. Because I have ruled that NOAA may withhold the raster compilations for up to five years under Exemption 3, the Agency's Exemption 5 arguments are moot.

## V. THE CRADA DOCUMENTS

Although NOAA turned over most of the CRADA-related documents DeLorme sought, it withheld a portion of one page pursuant to FOIA Exemption 6, § 552(b)(6), and three other pages in their entirety pursuant to Exemption 5, § 552(b)(5). DeLorme has failed to respond to the arguments put forth by NOAA to justify its withholding of those documents, and I treat the issue as waived.

(exempting promotion rating plan), *cert. denied,* 488 U.S. 1011, 109 S.Ct. 798, 102 L.Ed.2d 789 (1989); *Dirksen v. HHS,* 803 F.2d 1456, 1458–59 (9th Cir.1986) (exempting guidelines for processing Medicare claims). Three other circuits have adopted a narrow reading more closely tied to the plain meaning of the phrase, *see Stokes v. Brennan,* 476 F.2d 699, 702–03 (5th Cir.1973); *Hawkes v. IRS,* 467 F.2d 787, 796–97 (6th Cir. 1972); *Cox v. Dep't of Justice,* 576 F.2d 1302, 1309–10 (8th Cir.1978), but those circuits have not revisited the issue since *Jordan* or *Crooker.* The disagreement is reflected in treatises as well. *See* Justin D. Franklin and Robert F. Bouchard, *Guidebook to the Freedom of Information and Privacy Acts* § 1.05[2] (1995) (discussing courts' broad application of Exemption 2); Kenneth Culp Davis and Richard J. Pierce, Jr., *Administrative Law Treatise* § 5.8 (3rd Ed.1994) (rejecting "creative reasoning" behind broad reading of Exemption 2).

11. NOAA argues that the raster files "cast light" upon the Agency's charting process because they reveal: 1) "NOAA's process for editing the raster files"; 2) "the resolution of the image that NOAA finds appropriately accurate"; 3) "how NOAA archives previous editions of its nautical charts"; 4) "what computer equipment and software would be most suitable for NOAA's projects"; and 5) "the skills and abilities NOAA seeks ... in its hiring and promotion process." Def.'s Opp'n to Pl.'s Mot. for Summ.J. at 6. Just listing the arguments makes clear how ludicrous is NOAA's position that raster files qualify under FOIA Exemption 2, however broadly Exemption 2 is read. As Judge Leventhal observed years ago in *Vaughn,* "[i]n some attenuated sense, virtually everything that goes on in the Federal Government ... could be said to be 'related' through some chain of circumstances to the 'internal personnel rules and practices of an agency.'" 523 F.2d at 1150 (Leventhal, J., concurring).

## VI. CONCLUSION

For the foregoing reasons, I find that NOAA has properly invoked Exemption 3, § 552(b)(3), and the FTTA, § 3710a(c)(7)(B), to withhold the raster files for up to 5 years from the date of their development.

Summary judgment shall be entered for the defendant and against the plaintiff. There is no need to rule on DeLorme's motion to strike certain portions of NOAA's statement of material facts, as I have not relied upon any of the contested portions in reaching my conclusions. NOAA's motion to amend its statement of material facts is therefore MOOT. Oral argument as requested by NOAA is unnecessary. Because De-Lorme has not "substantially prevailed" in this litigation, I DENY its request for an award of attorney fees. *See* 5 U.S.C. § 552(a)(4)(E).

SO ORDERED.